## HOTCHKISS v. CITY OF BINGHAMTON.

(Supreme Court, Appellate Division, Third Department.   December 28, 1911.)

1. MUNICIPAL CORPORATIONS (§ 281*)—PUBLIC IMPROVEMENTS—SIDEWALKS—
    SPECIAL CONTRACTS FOR REBATE.

    Binghamton City Charter (Laws 1907, c. 751) § 178, provides that if any sidewalk be paved by the owner with material other than wood, and, such walk being built for the first time, one-half of the cost of paving shall be paid by the city, but in no case shall the entire cost of the walk exceed $2 per square yard for the purpose of fixing the amount to be paid by it.  A property owner applied for the grade and specifications of a sidewalk, and the commissioner of public works stamped on the margin of the application: "This permit is granted upon the express condition that the entire cost of the sidewalk shall not exceed 90 cents per square yard for five-foot wide sidewalk, and $1 per square yard for six-foot wide sidewalk, for the purpose of fixing the amount to be paid by the city." Held, that the stamped notice did not amount to a special contract by the owner with the city reducing the cost of the sidewalk below that provided by section 178 for the purpose of fixing the amount to be paid by the city, in absence of proof that the owner expressly assented thereto; the mere building of the sidewalk by him not implying an assent.

    [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 281.*]

2. MUNICIPAL CORPORATIONS (§ 281*)—PUBLIC IMPROVEMENTS—SIDEWALKS.

    A city cannot by special contract with the property owner reduce the maximum cost of a sidewalk built by him below that fixed by Binghamton City Charter (Laws 1907, c. 751) § 178, fixing a maximum limit of the entire cost of the walk for the purpose of prescribing the amount thereof to be paid by the city.

    [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 281.*]

    Kellogg, J., dissenting.

Appeal from Trial Term, Broome County.

Action by Mark S. Hotchkiss against the City of Binghamton.   From a judgment for plaintiff, defendant appeals.   Affirmed.

The action was brought to recover the sum of $83.85, one-half the cost of constructing two cement sidewalks in the city of Binghamton, under section 178, c. 751, Laws 1907, being the charter of the city of Binghamton.

This section provides that: "In case any sidewalk shall be paved or curbed by the owner with stone or any other material other than wood, approved by the commissioner of public works, and such walk or curb being built for the first time, one-half of the cost of such paving or curbing, exclusive of the costs of grading, shall, subject to the limitations in the next succeeding chapter provided, be paid by the city.   But in no case shall the entire cost of such walk exceed two dollars per square yard for the purpose of fixing the amount to be paid by the city."   The next succeeding section provides that the amount to be expended for the city's share of the construction of permanent walks and curbs during any one year shall not exceed the sum of $20,000, and that whenever the cost to the city in any one year shall exceed that sum the excess shall not be collectible from the city during said year, but shall be paid from the amount authorized to be appropriated for sidewalk construction in the next succeeding annual tax budget.

An application was made to the commissioners of public works by each of two property owners, assignors of the plaintiff, for grade and specifications for a cement walk.   The applications were prepared by using printed forms

furnished by the commissioner, and, when completed by filling in the written portion, were signed by the applicants. Each blank was as follows:

"Binghamton, ———, 191—.

. "To the Commissioner of Public Works—Sir: I hereby make application for grade and specifications for a cement sidewalk to be laid on the ——— side of ——— street No. ———. My object in making this application is that the said sidewalk or curbing may be laid in conformity with the rules and regulations of the commissioner of public works and that on the completion thereof, I may receive the rebate allowed in accordance with sections 178–179 of the city charter. I am the owner of said property duly appointed by power of attorney recorded in the office of the clerk of Broome county.

"———————."

Above the applications, and upon the upper margin of each blank, the commissioner had caused to be stamped in red ink some time prior to its delivery to the owners the following: "This permit is granted upon the express condition that the entire cost of the sidewalk shall not exceed ninety cents per square yard for five foot wide sidewalk and one dollar per square yard for six foot wide sidewalk, for the purpose of fixing the amount to be paid by the city." The grade and specifications were furnished and the sidewalks were constructed, five feet wide, in accordance therewith, and that fact was certified to by the city engineer and the commissioner of public works.

It appeared upon the trial that the cost of the walks was $1.08 per square yard, and that the total cost was $167.70; that the comptroller refused to audit the claim at more than 45 cents per square yard; that he did not question the statement of the owners that the walk cost 12 cents per square foot, but that he based his refusal solely upon the effect of the notice.

Argued before SMITH, P. J., and KELLOGG, SEWELL, HOUGHTON, and BETTS, JJ.

Burr W. Mosher, for appellant.

Edward K. Clark, for respondent.

SEWELL, J. [1] The only question necessary to be considered in this case arises out of the notice stamped in red ink upon the printed forms furnished for the applications. It is plain that the defendant's charter imposes upon it the obligation of paying one-half the cost of a sidewalk, if it does not exceed $2 per square yard, and the inquiry, therefore, is, as to legal effect of the notice, whether it controlled or affected the rights of the parties. It is clear that it does not, but admitting, for the sake of the argument, that the commissioner of public works had a right or duty in respect of the city share of the cost of construction, and that he could, by a special mutual contract, protect it or reduce its liability below the amount fixed by the charter, I am of the opinion that the notice was not such a contract. It was at most a notice brought home to the owners that the city would not abide the liability which its charter imposed on it. It is clear that such a notice does not amount in law to a special contract in the absence of proof that the owner assented to its terms. The notice is no evidence of an assent on the part of an owner, and it must be conceded that, if the construction of the walk authorizes an implication of any kind, the presumption is as strong, to say the least, that the owner intended to insist on his legal rights as it is that he consented to a reduction of the liability of the city. A special contract cannot, I think, be implied where there is such an equipoise of probabilities, and in no other manner is it contended that one was established.

The city being, by the express terms of its charter, under a legal obligation to pay one-half the cost of constructing a walk, and an owner being under a legal obligation to construct it (sections 171 to 176), it is difficult to understand how the mere building of the walk authorizes the inference that the owner agreed that the liability of the city should be less than the amount fixed by the statute. Such a conclusion, I think, overlooks the important consideration that an owner has the right to insist that he shall be paid the amount fixed by the statute, and that he is not required to object under penalty of the loss of his legal rights. To infer, under the circumstances of this case, an assent to a contract waiving the statutory liability of the city, would be, not only making an inference contrary to the natural import of the transactions, but contrary to the expressed intention of the owners as set forth in their applications. The presumption rather is that the owners built the walks under the contract which the law creates, and not upon the terms of the notice. It is, however, not necessary to rest the decision of this case upon the proposition that a special contract may not be inferred from the notice and the acts of the owners in building the walks.

[2] If a special contract between the commissioner and the owners, or between the city and the owners, can be implied from such a notice, its terms are quite immaterial, for the extent of the city's liability does not depend on such a contract. It is declared by law. If the city can, by such a notice, reduce the liability imposed upon it by the statute, no reason is perceived why it may not in the same way except itself from any liability. We are referred to no case in support of the position that, where a corporation or a man is chargeable to a certain extent by the operation of law, he can, by an act of his own, discharge himself. There is no principle upon which such a conclusion can be founded. If the entire cost of a walk should not exceed 90 cents per square yard "for five-foot wide sidewalks," it is the business of the Legislature to make that sum the limit of the cost for the purpose of fixing the amount to be paid by the city, and not of the courts.

It follows that the judgment should be affirmed, with costs. All concur except KELLOGG, J., dissenting in opinion.

JOHN M. KELLOGG, J. (dissenting). The walks were constructed on standard specifications, and many such walks were laid in the city at an expense of 10 cents per square foot, and undoubtedly contracts could have been made with responsible parties to perform the work according to the specifications in every respect at that price. When the contract was let to the plaintiff, the owner called his attention to the rubber stamp provision, which allowed only 10 cents per square foot, but the contractor claimed that the city could pay $2 under the charter. The plaintiff had taken several contracts to build walks upon these specifications at 10 cents and less, and had taken many contracts at 12 cents. He says it costs more per foot to build a 50-foot walk than one of 100. The walks in question were one 136 feet, one 143 feet. As the plaintiff puts it, he usually gets 12 cents whether the walk is 50 feet or more; that the long job would help to make up what they lost on the short one. He says:

"The man who had 200 feet of walk had to help pay to build the walk of the man who had but 50 feet of walk." If the property owner is paying for his own walk, he can undoubtedly employ the highest bidder if he chooses, but, when the city is to pay a part of the cost, it is but fair and reasonable that he should take advantage of the lowest bidder if the work is done according to the specifications. No effort was made to obtain a contract for these walks at 10 cents, although it is evident that such contracts could have been made. The evidence tends to show that the walk in question had a granite finish, which finish was not called for by the specifications, made the walk more expensive, and it is claimed that such walks are better. The rubber stamp provision was not intended to annul the charter provision or to deprive the property owner of one half of the cost of the walk, but it was to limit the expense to the city to what was a reasonable and fair price and to what competent contractors were willing to contract for according to specifications.

The plaintiff's evidence is confined to proof of the cost of the particular walks in question with a granite finish. He offered no proof as to the cost of constructing the walks according to the specifications named in the application and permit. It appearing that responsible contractors were ready to build walks offering at 10 cents, the action of the property owners in contracting with the plaintiff for 12 cents was unreasonable, and the plaintiff and the property owners are fairly limited to the 10 cents mentioned in the rubber stamp provision.

The defendant was not permitted to show that at the time these claims were coming in there were other claims of the same character for sidewalks built by others than the plaintiff at 10 cents per square foot, and that other contractors were laying walks under those specifications at that price. The witness Meeker was building many walks under contract, and the defendant was not permitted to show that the contract price was 10 cents. The exceptions to the exclusion of this class of evidence were well taken. It bore directly upon the question at issue as to the cost and the good faith of the agreement that 10 cents should be the maximum price which should be considered in adjusting with the city. Under the charter the city was chargeable only where the application for a walk was approved of by the commissioner of public works, and, in case he deemed its construction at that time unnecessary, he could withhold his permit. If he knew that walks could be constructed by responsible parties according to the specifications at 10 cents and he had known that the property owners were without question to pay 12, it would be a proper discharge of his duty to say that the construction of the walk at that time was not necessary. When he was called upon to determine whether this walk should be built, he knew, and probably the property owner knew, that some contractors were doing the work at 10 cents and others at 12, and they agreed between them that so far as the city was concerned it should be considered a 10-cent job. In other words, the construction of the walk on these specifications was permitted with the understanding that the highest bidder was not to have the work. I think it was well within the power of the city and

the property owners to make this contract, and, under the circumstances, it was entirely reasonable and proper.

I therefore favor a reversal of the judgment, and the order upon the law and the facts and the granting of a new trial, with costs to the appellant to abide the event.